# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>Carroll D. Brown,<br><br>               Debtor(s). | C/A No. 25-03486-jd<br><br>Chapter 13<br><br>**ORDER DENYING CONFIRMATION, ORDERING AMENDMENT OF SCHEDULES, AND CONTINUING HEARING ON DISMISSAL** |

THIS MATTER came before the Court on the motion to dismiss ("Motion") filed by creditor John Marion Baker ("Movant") filed on November 13, 2025,[1] and for confirmation of the modified chapter 13 Plan[2] filed by Debtor Carroll D. Brown ("Debtor") on November 25, 2025. A hearing on the Motion and on confirmation of the modified Plan was held on January 8, 2026. Debtor, Counsel for Debtor, Counsel for Movant, and the Chapter 13 Trustee were present, and Debtor was placed under oath for testimony and cross-examination. Following Debtor's testimony, and the legal arguments presented by Debtor, Movant, and the Chapter 13 Trustee, the Court took the Motion and confirmation under advisement.

This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (L), and the Court may issue a final order.

---

[1] ECF No. 13.
[2] ECF No. 20. A Plan was filed on the same day the petition was filed. *See* ECF No. 3.

## FACTS AND PROCEDURAL HISTORY

Beginning in 2006, Debtor and Movant allegedly entered into a "handshake agreement" to operate a mobile home park. Debtor and Movant appear to have had different understandings about the nature of their business arrangement. Debtor believed he and Movant were in a partnership, and Movant believed Debtor was employed by Movant to manage the mobile home park. In 2020, after Movant informed Debtor of his intention to sell the mobile home park, Debtor sued Movant to enforce their alleged partnership agreement, under which Debtor argued he was entitled to a certain percentage of proceeds from the sale.[3] Movant filed counterclaims for a breach of fiduciary duties and conversion. Therein, Movant asserted that Debtor was not his partner, but an employee tasked with managing the mobile home park. Movant alleged Debtor failed to carry out various duties entrusted to him as property manager, including:  leasing, collecting rent from, and maintaining mobile homes under Debtor's management; accounting for various fees Debtor collected from tenants, including rent, late fees, pet deposits, and security deposits; and purchasing mobile homes with business funds and then registering those mobile homes in Movant's name. In addition, Movant alleged Debtor registered mobile homes purchased with business funds in his own name and converted rental fees and tenant fees to his own use. Movant was granted summary judgment on his counterclaims

---

[3] *See Brown v. Maker*, South Carolina Court of Common Pleas, Lee County, Case No. 2020CP3100237.

for breach of fiduciary duty and conversion on June 27, 2023, and awarded damages of $301,150.00 on June 4, 2024.

After Movant was granted a judgment against Debtor, Debtor transferred the titles of certain mobile homes to his girlfriend, Chassity Wallace ("Wallace"), in July 2024. Debtor apparently received no consideration from Wallace when the titles were transferred. After Debtor transferred title to the mobile homes to Wallace, an Execution Against Property was signed by the Lee County judge stating that Movant's judgment be satisfied "out of personal property of [Debtor], within [Movant's] county; if sufficient personal property cannot be found, then [Movant is] to satisfy the judgement out of real property in [Movant's] county belonging to [Debtor] on the date the judgment was docketed in [Movant's] county or from real property thereafter regardless of the person now claiming ownership or possession, and to duly return this Execution according to the law to the Clerk of Court."[4]

Debtor filed a voluntary chapter 13 petition, including certain schedules and statements (the "Original Schedules"),[5] and a Plan (the "Original Plan") on September 5, 2025.[6] The Original Schedules list the value of Debtor's assets as $169,917.46, comprised of $89,961.46 in real property, $9,600.00 in vehicles, $3,530.00 in household items, and $66,826.00 in

---

[4] *See Brown v. Maker*, South Carolina Court of Common Pleas, Lee County, Case No. 2020CP3100237, Execution Against Property (Aug. 7, 2024).
[5] ECF No. 1.
[6] ECF No. 3.

financial assets, with liabilities of $303,582.00. Specifically, Debtor lists a

legal or equitable interest in the following real property:[7]

1. 1655 Raccoon Rd., Mayesville, SC 29104, Parcel Number 058-00-00-082-001 (Part 1.1.)
   a. Nature of ownership interest: "Title to Mobile Home; not retired, not with land."
   b. Current value of entire property: $32,590.00
   c. Current value of portion owned by Debtor: $32,590.00
      i. The Original Schedules note that this property secures Movant's judgment lien and states the secured value of the judgment lien is limited to $32,590.00.[8]
2. 1655 Raccoon Rd., Mayesville, SC 29104, Parcel Number 058-00-00-082-000 (Part 1.2)
   a. Nature of ownership interest: Not listed.
   b. Current value of entire property: $5,000.00
   c. Current value of portion owned by Debtor: $5,000.00
3. 1677 Raccoon Rd., Mayesville, SC 29104, Parcel Number 058-00-00-083-000 (Part 1.3)
   a. Nature of ownership interest: "Life Estate"
      i. In the field for "Other information you wish to add about this item, such as local property identification number", Debtor notes that his daughter has a remainder interest in the property pursuant to a life estate.
   b. Current value of entire property: $15,000.00
   c. Current value of portion owned by Debtor: $5,700.00
4. 1577 Springhill Rd., Mayesville, SC 29104, Parcel Number 042-00-00-084-000 (Part 1.4)
   a. Nature of ownership interest: "Life Estate"
   b. Current value of entire property: $65,856.00
   c. Current value of portion owned by Debtor: $25,025.28
5. 1739 Raccoon Rd., Mayesville, SC 29104, Parcel Number 058-00-00-088-000 (Part 1.5)
   a. Nature of ownership interest: "Life Estate"
      i. In the field for "Other information you wish to add about this item, such as local property identification number", Debtor notes that his daughter has a remainder interest in the property.

---

[7] ECF No. 1, pp. 10–16 (Schedule A/B: Property).
[8] ECF No. 1, p. 25 (Schedule D: Creditors Who Have Claims Secured by Property).

     b.  Current value of entire property: $12,770.00

     c.  Current value of the portion owned by Debtor: $4,852.60

6. Three mobile homes located at Parcel Number 058-00-00-193-000 on Raccoon Road (Part 1.6)

     a.  Nature of ownership interest: "Life Estate"

     b.  Current value of entire property: $13,416.00

          i.  In the field for "Other information you wish to add about this item, such as local property identification number", Debtor notes that current value of the entire property is Debtor's estimate of its "taxable value," which Debtor believes is $1000.00 per acre, as the parcel is located on "swamp land."

     c.  Current value of the portion owned by Debtor: $5,098.08

7. Parcel Number 058-00-00-194-000 on Raccoon Rd., Mayesville, SC 29104 (Part 1.7)

     a.  Nature of ownership interest: "Life Estate"

     b.  Current value of entire property: $5,225.00

          i.  In the field for "Other information you wish to add about this item, such as local property identification number", Debtor notes that Lee County estimates the parcel is valued at $26,500.00. Debtor states his estimate of the current value of the property is what he considers the land's taxable value.

     c.  Current value of the portion owned by Debtor: $1,985.50

8. Lot on Cedar Lane, Parcel Number 030-02-00-221-000 (Part 1.8)

     a.  Nature of ownership interest: "Life Estate"

     b.  Current value of entire property: $4,500.00

     c.  Current value of the portion owned by Debtor: $1,710.00

9. 50 Herbert Lane, Parcel Number 042-00-00-084-007 (Part 1.9)

     a.  Nature of ownership interest: "Title to Mobile Home; not retired, not with the land"

     b.  Current value of entire property: $2000.00

          i.  In the field for "Other information you wish to add about this item, such as local property identification number", Debtor notes that Lee County estimates the value of the mobile home

on this parcel is $3540.00, but that the mobile home is only worth $2000.00.

    c. Current value of the portion owned by Debtor: $2000.00.

10. 31 Herbert Lane, Parcel Number 042-00-00-084-00 (Part 1.10)

    a. Nature of ownership interest: "Title to Mobile Home; not retired, not with land"

    b. Current value of entire property: $2000.00

        i. In the field for "Other information you wish to add about this item, such as local property identification number", Debtor notes that Lee County estimates the value of the mobile home on this parcel is $4950.00, but Debtor believes the mobile home is only worth $2000.00.

    c. Current value of the portion owned by Debtor: $2000.00.

11. 45 Herbert Lane, Parcel Number 042-00-00-084-004 (Part 1.11)

    a. Nature of ownership interest: "Title to Mobile Home; not retired, not with land"

    b. Current value of entire property: $2000.00

        i. In the field for "Other information you wish to add about this item, such as local property identification number", Debtor notes that Lee County estimates the value of the mobile home on this parcel is $4400.00, but Debtor believes the mobile home is only worth $2000.00.

    c. Current value of the portion owned by Debtor: $2000.00.

12. 59 Herbert Lane, Parcel Number 042-00-00-084-003 (Part 1.12)

    a. Nature of ownership interest: "Title to Mobile Home; not retired, not with land"

    b. Current value of entire property: $2000.00

        i. In the field for "Other information you wish to add about this item, such as local property identification number", Debtor notes that Lee County estimates the value of the mobile home on this parcel is $6190.00, but Debtor believes the mobile home is only worth $2000.00.

    c. Current value of the portion owned by Debtor: $2000.00.

The Original Schedules list Movant as Debtor's lone secured creditor and

note Movant's judgment lien of $301,150.00 is secured by the $32,590.00

value of the property located at 1655 Raccoon Rd., Mayesville, SC 29104. The

other debts listed by Debtor are the priority unsecured claims of $0.00

belonging to the IRS and the South Carolina Department of Revenue,

respectively;[9] the non-priority unsecured claim of $1,562.00 belonging to

Affirm, Inc.;[10] the non-priority unsecured claim of $0.00 belonging to Kevin

Barth, Esq.;[11] and the nonpriority unsecured claim of $870.00 belonging to

MUSC Health.[12] The claims register reflects unsecured claims filed by

Carolina Pines Regional Medical Center and Affirm, Inc., of $150.00 and

$1,483.95, respectively, and a secured claim filed by Movant of $348,385.17.

Movant's claim reflects post-judgment, pre-petition interest of $47,235.17.

According to the Original Schedules,[13] Debtor is employed by and

earns $3,325.29 in monthly take-home pay through traditional employment;

earns -$75.00 per month of income from rental property and operating a

business; and ultimately nets $953.49 per month after expenses.[14] The

Original Schedules also disclose[15] Debtor's transfer of the title to 14 mobile

homes, each valued at $2,000.00, for "no [money] exchanged[,] love and

---

[9] ECF No. 1, p. 26.
[10] ECF No. 1, p. 27.
[11] *Id.*
[12] ECF No. 1, p. 28.
[13] ECF No. 1, pp. 31–32 (Schedule I: Your Income).
[14] ECF No. 1, pp.33–34 (Schedule J: Your Expenses).
[15] ECF No. 1, p. 41 (Official Form 107, Statement of Financial Affairs for Individuals Filing for Bankruptcy).

affection only" to Wallace. Debtor notes that "only non-exempt values are listed on Schedule A/B as still listed as Carroll Brown['s] property in ASSESSORS office because of on property owned by Daughter and Debtor (life Estate)."

The Original Plan states Debtor will pay the Chapter 13 Trustee $839.00 per month for 60 months.[16] Part 3.2 of the Original Plan estimates Movant's total claim at $301,150.00, and the secured amount of Movant's claim at $32,590.00, and proposes Movant make 60 monthly payments of $677.00 at 9.00% interest to the Trustee.[17] Section 5.1 of the Original Plan estimated Debtor will pay unsecured creditors less than 100% of their claim.[18]

Movant[19] and the Chapter 13 Trustee[20] filed objections to the Original Plan on November 13, 2025. Movant asserts that the Original Plan cannot be confirmed because it was not filed in good faith. Instead, Movant avers the Original Plan was filed as an attempt to hinder, delay, or frustrate the enforcement of Movant's judgment in violation of 11 U.S.C. §§ 1325(a)(3) and 1325(a)(7).

Movant contends the Original Plan fails to pay Movant's secured claim in full, as required by 11 U.S.C. § 1325(a)(5), despite Debtor's ability to pay;

---

[16] ECF No. 3, p. 2.
[17] ECF No. 3, p. 3.
[18] ECF No. 3, p. 5.
[19] ECF No. 14.
[20] ECF No. 15.

that the Original Schedules do not disclose all of Debtor's assets or income—specifically, the rental income and tenant fees Debtor continues to earn from the mobile homes he owns, and the mobile homes titled under Wallace's name; and that the Original Plan is not feasible under 11 U.S.C. § 1325(a)(6).

Similarly, the Trustee expresses concern that the Original Plan was not filed in good faith because it is not clear that the Original Plan complies with 11 U.S.C. § 1325(a)(4)[21] or 11 U.S.C. § 1325(b)(1)(B).[22] The Trustee's Objection further raises the question of whether Debtor's July 2024 transfer of the mobile homes to Chassity Wallace was fraudulent under 11 U.S.C. § 548.

In addition to his objection, Movant filed the Motion on November 13, 2025.[23] Therein, Movant asserts Debtor's case is a two-party dispute that was filed solely to avoid enforcement of Movant's judgment and therefore should be dismissed under 11 U.S.C. § 1307(c). Debtor thereafter filed the modified Plan ("Modified Plan")[24] and amended schedules A/B, I, and J, and Form 122C2 ("Amended Schedules").[25] Neither Movant nor the Trustee have filed

---

[21] "The court shall confirm a plan if the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date." 11 U.S.C. § 1325(a)(4).

[22] "If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan . . . the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B).

[23] ECF No. 13.

[24] ECF Nos. 18 and 26.

[25] ECF No. 27.

an additional or amended objection in response to the Amended Schedules

and Modified Plan. In the Notice of Amendments, Debtor states:

> In accordance with Bankruptcy Rule 1009, the undersigned
> hereby amends her petition as follows: TO AMEND
> SCHEDULES A/B clarif[ies] that 59 Herbert Lane includes bulk
> of [mobile homes] and address of 1577 Springhill, 1579 Springhill,
> 10 Herbert Lane, 11 Herbert Lane, etc -9 in total value of [mobile
> homes] included as improvements in tax assessment and overall
> value of the land and removes duplicate values of [mobile homes]
> as sublots as original schedules represented. I and J amended and
> amended business income expense shows income per 341
> testimony of additional $400.00 per month beyond what was
> originally calculated per records & schedule E tax forms, 122C
> revised.

In the Amended Schedules, Debtor estimates his assets have a total value of

$161,917.46. Regarding Debtor's interests in real property, the Amended

Schedules reflect the following changes[26]:

1. 59 Herbert Lane, Parcel Number 042-00-00-084-000 (Part 1.4)
   a. Nature of ownership interest: "Life Estate"
      i. In the street address of the property, Debtor states "[t]his property contains 1577, 1579 [Springhill], 10, 11, 30, 50 Herbert Lane [mobile homes]."
   b. Current value of the entire property: $65,856.00
   c. Current value of portion owned by Debtor: $25,025.28
2. 50 Herbert Lane, Parcel Number 042-00-00-084-007 (Part 1.9)
   a. Nature of ownership interest: "Title to Mobile Home; not retired, not with land."
   b. Current value of the entire property: $0.00
      i. In the field for "Other information you wish to add about this item, such as local property identification number," Debtor states that the value of the mobile home on the parcel is "already included in 042-00-00-084-000."
   c. Current value of portion owned by Debtor: $0.00
3. 31 Herbert Lane, Parcel Number 042-00-00-084-005 (Part

---

[26] ECF No. 27, pp. 2–8 (Schedule A/B: Property).

    1.10)

    a.  Nature of ownership interest: "Title to Mobile Home; not retired, not with land."

    b.  Current value of entire property: $0.00

        i.  In the field for "Other information you wish to add about this item, such as local property identification number," Debtor states that the value of the mobile home on the parcel is "already included in 042-00-00-084-000."

    c.  Current value of portion owned by Debtor: $0.00

4.  42 Herbert Lane, Parcel Number 042-00-00-084-004 (Part 1.11)

    a.  Nature of ownership interest: "Improvement thereon"

    b.  Current value of entire property: $0.00

        i.  In the field for "Other information you wish to add about this item, such as local property identification number," Debtor states that the value of the mobile home on the parcel is "already included in 042-00-00-084-000."

    c.  Current value of portion owned by Debtor: $0.00

5.  59 Herbert Lane, Parcel Number 042-00-00-084-003 (Part 1.12)

    a.  Nature of ownership interest: "Improvement thereon"

    b.  Current value of entire property: $0.00

        i.  In the field for "Other information you wish to add about this item, such as local property identification number," Debtor states that the value of the mobile home on the parcel is "already included in 042-00-00-084-000."

    c.  Current value of portion owned by Debtor: $0.00

In Parts 1.9–1.12 of Amended Schedule A/B, Debtor now asserts that the value of the mobile homes located on the parcels at 50 Herbert Lane, 31 Herbert Lane, 42 Herbert Lane, and 59 Herbert Lane have been accounted for in the valuation of the parcel located at 59 Herbert Lane; however, while the mobile homes on the parcels at 50, 31, 42, and 59 Herbert Lane were each valued at $2,000.00 in the Original Schedules—totaling $8,000.00—the valuation of the parcel at 59 Herbert Lane remains the same in the Amended

Schedules as it was in the Original Schedules. Additionally, the Amended

Schedules list $400.00[27] of monthly net income from rental property and/or

operating a business, combined monthly income of $3,725.49,[28] and monthly

net income of $1,190.49.

In the Modified Plan, Debtor states he will pay the Chapter 13 Trustee

$839.00 per month for three months, followed by 57 monthly payments of

$1,089.00. From that amount, $766.00 is to be paid to Movant by the Trustee

every month at 9.00% interest. The Modified Plan proposes Movant's secured

claim be treated as follows: (A) as non-governmental claims in Part 3.2; (B) as

other secured claims excluded from 11 U.S.C. § 506 in Part 3.3; and (C) by

avoiding the remainder of Movant's judgment in Part 3.4. Debtor first asks

the Court to determine the secured amount of Movant's claim in Part 3.2 as

follows:

1. Debtor asks the Court to confirm the secured amount of
   Movant's claim as it pertains to Parcel Number 042-00-00-
   084-000, which Debtor states is $23,125.00.
   a. Debtor proposes this secured claim may be treated via 60
      monthly payments of $481.00 at 9% interest.
2. Debtor asks the Court to confirm the secured amount of
   Movant's claim as it pertains to Parcel Number 042-00-00-
   084-007, which Debtor states is $0.00.
3. Debtor asks the Court to confirm the secured amount of
   Movant's claim as it pertains to Parcel Number 042-00-00-
   084-005, which Debtor states is $0.00.
4. Debtor asks the Court to confirm the secured amount of
   Movant's claim as it pertains to Parcel Number 042-00-00-
   084-004, which Debtor states is $0.00.
5. Debtor asks the Court to confirm the secured amount of
   Movant's claim as it pertains to Parcel Number 042-00-00-

---

[27] ECF No. 27, p. 15 (Schedule I: Your income).
[28] *Id*.

084-003, which Debtor states is $0.00.

Next, Debtor proposes the following portion of Movant's claim be paid in full,

without valuation or lien avoidance, as follows:

1. Debtor estimates the amount of Movant's claim that is
   secured by Parcel Number 058-00-00-194-000 is $1,985.00
   and proposes that the Trustee disburse monthly payments of
   $42.00 to Movant through the life of the Modified Plan.
2. Debtor estimates the amount of Movant's claim that is
   secured by Parcel Number 030-02-00-221-000 is $1,710.00
   and proposes that the Trustee disburse monthly payments of
   $36.00 to Movant through the life of the Modified Plan.
3. Debtor estimates the amount of Movant's claim that is
   secured by Parcel Number 058-00-00-088-000 is $4,852.00
   and proposes that the Trustee disburse monthly payments of
   $101.00 to Movant through the life of the Modified Plan.
4. Debtor estimates the amount of Movant's claim that is
   secured by the three mobile homes located on Parcel Number
   058-00-00-193-000 is $5,098.08 and proposes that the
   Trustee disburse monthly payments of $106.00 to Movant
   through the life of the Modified Plan.

Finally, Debtor asserts that Movant's judicial lien, as secured by the

following properties, be avoided and treated as an unsecured claim:

1. Debtor asks that the Court avoid the $5,700.00 of the
   judgment lien as it pertains to Parcel Number 058-00-00-083-
   000, which corresponds with the stated value of Debtor's
   interest in this collateral property.
2. Debtor asks that the Court avoid $1,900.00 of the judgment
   lien as it pertains to Parcel Number 042-00-00-084-000, with
   an amount of lien not avoided (and paid in Part 3.2) of
   $23,125.00.
3. Debtor asks that the Court avoid $32,590.00 of the judgment
   lien as it pertains to Parcel Number 058-00-00-082-001,
   which corresponds with the stated value of Debtor's interest
   in this collateral property.

In addition to the Amended Schedules and the Modified Plan, Debtor filed a

reply to Movant's motion to dismiss, asserting that Debtor's bankruptcy case

was filed in good faith and does not constitute a two-party dispute.[29] Debtor

asserts that DMV records may[30] reflect that Debtor transferred 14 mobile

homes to Wallace, but the tax assessor records for Lee County indicate the

mobile homes are held either by Debtor or by the life estate. Debtor argues

that his attempt to transfer ownership of those mobile homes to Wallace

failed because the mobile homes, despite not having been retired, are

improvements that have attached to the land on which they are located and

cannot be conveyed.

In addition, Debtor asserts that his interest in the parcels that make

up the life estate, and his payment of taxes on those parcels, indicate that

Debtor holds title to the parcels in the life estate and the mobile homes

attached to those parcels, and, therefore, Debtor's attempt to transfer mobile

homes to Wallace failed, and therefore did not diminish the value of Debtor's

estate. Debtor's objection further notes, with the exception of Parcel No. 058-

00-00-082-000 and Parcel No. 058-00-00-082-001, the parcels of land disclosed

in the Amended Schedules are part of a life estate established in 2018, with a

remainder interest to Debtor's daughter, and that the schedules reflect his

38% interest in each of the parcels comprising the life estate.[31]

---

[29] ECF No. 22.

[30] Debtor did not provide the Court with DMV records pertaining to the title of the mobile
homes in question.

[31] Debtor's other parcels are: 058-00-00-194-000 and 058-00-00-193-00, a life estate with
remainder to Kayla Brown, his daughter; parcel 030-02-00-221-000, Cedar Lane Mayesville
SC, a life estate with remainder to Kayla Brown, his daughter; 058-00-00-088-000, at 1739
Raccoon Rd. Mayesville, a life estate with remainder to Kayla Brown, his daughter; and
Parcel 042-00-00-084-000 59 Herbert Lane, a life estate with remainder to Kayla Brown, his
daughter. ECF No. 22, p. 4.

After Debtor's reply to the objections was filed, Movant opened an
adversary proceeding, alleging his judgment lien is non-dischargeable on the
basis of fraud, fraud and defalcation, and willful and malicious injury.[32]
Debtor filed a motion to dismiss the adversary proceeding.[33]

At the hearing, Debtor provided testimony contradicting his counsel's
assertion that the mobile homes were not actually transferred to Wallace.
Debtor testified that he intended to convey certain mobile homes to Wallace
by having the title to each mobile home, as administered by the Department
of Motor Vehicles, transferred to Wallace; such a transfer of title could not
occur if the mobile homes were affixed to real property titled in the name of
another. Debtor also asserted that the mobile homes were still listed in his
name in Lee County records, that he continues to pay personal property taxes
on and collect rents from the mobile homes, and that after he passes away,
Wallace could go to Lee County and have the mobile homes registered as
personal property in her name.[34] Debtor offered no other testimony that the
mobile homes were affixed to the land.

## CONCLUSIONS OF LAW

The Court may issue any order, process, or judgment that is necessary

---

[32] C/A No. 25-80069-jd, ECF No. 1.
[33] C/A No. 25-80069-jd, ECF No. 5.
[34] The location of the mobile homes transferred do not appear to match the real property accounted for in the schedules Debtor's Statement of Financial Affairs discloses that he transferred mobile homes located at the following addresses: 1599 Springhill Road, 1745, 1241, 1231, 1221, 1211, 1201, 1260, and 1226 Raccoon Road. It is possible that the location of these mobile homes are on parcels disclosed in the Schedules but that is not evident from the Schedules or the testimony.

or appropriate to carry out the provisions of the Bankruptcy Code. 11 U.S.C.

§ 105(a). The court shall confirm a plan if "[t]he plan complies with the

provisions of this chapter and with the other applicable provisions of this

title." 11 U.S.C. § 1325(a)(1). "For a Chapter 13 plan to be confirmed, the

Court must find that it satisfies the requirements of 11 U.S.C. § 1325(a)." *In

re Kemmerlin*, 659 B.R. 741, 748 (Bankr. D.S.C. 2024) (internal citation

omitted). "Debtor has 'the burden of proving by a preponderance of the

evidence that [his] plan meets the confirmation requirements of § 1325(a). . .

.'" *In re Morris*, 628 B.R. 824, 828 (Bankr. D.S.C. 2021) (quoting *In re

Martinelli*, 482 B.R. 537, 541-42 (Bankr. D.S.C. 2012)) (internal citations

omitted).

## I.    Are the Original Plan or the Modified Plan Confirmable?

The Court shall confirm a plan that "has been proposed in good faith and

not be any means forbidden by law." 11 U.S.C. § 1325(a)(3). The Court shall

confirm a plan if "the value, as of the effective date of the plan, of property to

be distributed under the plan on account of each allowed unsecured claim is

not less than the amount that would be paid on such claim if the estate of the

debtor were liquidated under chapter 7 of this title on such date." 11 U.S.C. §

1325(a)(4).

11 U.S.C. § 1325(a)(5) governs the treatment of secured creditors and

sets forth the three options a debtor has when dealing with secured claims.

Because Movant has not accepted the plan, *see* § 1325(a)(5)(A), and because

16

Debtor has not surrendered the property securing the judgment lien, *see* §
1325(a)(5)(C), the present controversy concerns § 1325(a)(5)(B), which is often
referred to as the "cram down" option. *Assocs. Com. Corp. v. Rash*, 520 U.S.
953, 957 (1997):

> A plan's proposed treatment of secured claims can be confirmed if
> one of three conditions is satisfied: The secured creditor accepts
> the plan, see 11 U.S.C. § 1325(a)(5)(A); the debtor surrenders the
> property securing the claim to the creditor, see § 1325(a)(5)(C); or
> the debtor invokes the so-called "cram down" power, see §
> 1325(a)(5)(B). Under the cram down option, the debtor is
> permitted to keep the property over the objection of the creditor;
> the creditor retains the lien securing the claim, see §
> 1325(a)(5)(B)(i), and the debtor is required to provide the creditor
> with payments, over the life of the plan, that will total the present
> value of the allowed secured claim, i.e., the present value of the
> collateral, see § 1325(a)(5)(B)(ii). The value of the allowed secured
> claim is governed by § 506(a)[35] of the Code.

*Id*. Debtor's asset holdings are complex. He holds title to numerous parcels of
land, but his description of his interest in these parcels in the Schedules varies
from his described interest in the Statement of Financial Affairs. Debtor
utilizes different approaches to valuation—shifting between market value,
assessed value, and his opinion of value. Some parcels contain mobile homes;
however, as this Order will explain in greater detail, the Court finds that those
mobile homes are personal property, and not real property. The inconsistencies

---

[35] "An allowed claim of a creditor secured by a lien on property in which the estate has an
interest, or that is subject to setoff under section 553 of this title, is a secured claim to the
extent of the value of such creditor's interest in the estate's interest in such property, or to
the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to
the extent that the value of such creditor's interest or the amount so subject to setoff is less
than the amount of such allowed claim. Such value shall be determined in light of the
purpose of the valuation and of the proposed disposition or use of such property, and in
conjunction with any hearing on such disposition or use or on a plan affecting such creditor's
interest." 11 U.S.C. § 506(a)(1).

in Debtor's disclosures and testimony render the task of assessing the overall value of his property and the secured value of Movant's claim quite impossible.

First, Debtor's Counsel contends that the value of the mobile homes was accounted for in the value of the real property. This cannot be true based on Debtor's testimony, Schedules, and the Statement of Financial Affairs. For example, the Statement of Financial Affairs indicates the mobile homes located on parcels of land on Raccoon Road are worth $2,000.00 each. In the Amended Schedules, which do not include a modified or amended Statement of Financial Affairs, Debtor assigns a total value of $5,225.00 to Parcel 058-00-00-194-000 on Raccoon Road and states that the value of his portion is $1,985.00; Parcel 058-00-00-194-000 contains a mobile home and his life estate in the real property comprised of 16.62 acres. In the Statement of Financial Affairs, Debtor asserts that while he attempted to transfer the title to the mobile home on that parcel to Wallace, the mobile home and land remain in his name. Debtor's ownership of the mobile home alone would make the value of his portion of Parcel 058-00-00-194-000 $2,000.00. Further, there are numerous addresses of mobile homes in the Statement of Financial Affairs that appear to have no corresponding address in the Schedules.

Second, Debtor's descriptions of his ownership interest in the properties disclosed are unclear or unsubstantiated. In the Statement of Financial Affairs included in the Original Schedules, he states title to certain mobile homes were transferred to Wallace but does not provide evidence of the change in title, say,

18

via DMV records. Debtor also appears to assert that he has only a 38% ownership interest in the life estate property in the Modified Plan, but does not provide any justification or support for this purported percentage of ownership.[36] In short, the Schedules do not make clear which property disclosed actually belongs to Debtor or how much any of this property is actually worth. Debtor has not met his burden of proof as to the value of the disclosed property. Therefore, the Court cannot assess whether the Original or Modified Plan provides unsecured creditors with a distribution equal to or greater than what they would receive in a Chapter 7 liquidation, as required by § 1325(a)(4). Similarly, the Court cannot accurately determine whether the Original or Modified Plan provide Movant with payments, over the life of the plan, that total the present value of Movant's claim. Neither the Original nor Modified Plan fulfill the requirements of § 1325(a)(5)(B).

Debtor's representations concerning his income and expenses also indicate that neither the Original Plan nor the Modified Plan are confirmable. 11 U.S.C. § 1325(b)(1)(B) restricts the Court from confirming a plan where all the debtor's projected disposable income is not applied to making payments to unsecured creditors:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan, the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

---

[36] ECF No. 22, p.4.

§ 1325(b)(1)(B). The schedules utilized in Chapter 13 cases advise debtors reporting net income from renting property, or operating a business, profession, or farm t"[a]ttach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income." The Original Schedules state that Debtor earns net income of -$75.00 from renting some 14 mobile homes, and provide no information to substantiate this figure. The Amended Schedules, in contrast, state that Debtor earns $400.00 in net income from renting those mobile homes, and offer some description of how Debtor reached this figure.

The discrepancies in the Amended Schedules and Modified Plan raise additional questions about whether Debtor actually transferred ownership of certain mobile homes to Wallace and whether the mobile homes allegedly transferred from Debtor to Wallace were fraudulently conveyed. Debtor submitted a form for business income and expenses with the Amended Schedules stating Debtor's estimated average future gross monthly income from renting the mobile homes is $5,140.00, and listing Debtor's estimated future monthly expenses as follows: $341.00 in other taxes (excluding payroll taxes, unemployment taxes, or workers compensation); $3,631.00 in repairs and maintenance; and $768.00 in insurance. Debtor provides no documentation for these figures. Even though the Amended Schedules provide a better accounting of Debtor's net rental income, the Court finds that without gross receipts for rental payments and fees and maintenance

20

Case 25-03486-jd   Doc 35   Filed 02/03/26   Entered 02/03/26 15:31:55   Desc Main
Document     Page 21 of 29

expenses, it cannot determine what Debtor's monthly disposable income is, and whether all of it is devoted to paying his unsecured creditors as required by § 1325(b)(1)(B). For these reasons, neither the Original Plan nor the Modified Plan are confirmable.

## II.   Were the Mobile Homes Transferred to Wallace Fixtures of or Improvements on the Life Estate Property?

Debtor's Amended Schedules state that the mobile homes transferred to Chassity Wallace in July 2024 add no value to the estate on their own because they are improvements and are therefore affixed to the parcels of land on which they are located. The S.C. De-titling Statute, S.C. Code Ann. § 56-19-500, et seq., of the South Carolina Code of Laws, provides:

> (A) An owner of a manufactured home may affix the home to real property by:
> (1) installing the home in accordance with the required installation standards and removing the wheels, axles, and towing hitch; and
> (2) filing with the register of deeds or clerk of court, as appropriate, for the county in which the manufactured home is located the Manufactured Home Affidavit for the Retirement of Title Certificate in the form prescribed in this article together with proof of ownership as evidenced by a copy of the most recent deed of record or other instrument vesting title, and paying the filing fee required for affidavits by Section 8-21-310.

S.C. Code Ann. § 56-19-510 (2025). In addition, the statute provides:

> (1) "Affixed" means that the manufactured home is installed in accordance with the state required installation standards, with wheels, axles, and towing hitch removed, and with the owner of the home having an intention that the manufactured home becomes an improvement to the real property whereon it is situated as evidenced by the filing of the affidavits provided in this article. The filing of the affidavits provided for in this article is conclusive proof of the intent to affix the manufactured home

21

to real property.

S.C. Code Ann. § 56-19-500 (2025). "South Carolina courts employ a common law test that considers the following factors to determine whether a mobile home is personal property or real property by virtue of becoming a fixture: (1) mode of attachment; (2) character of the structure or article; (3) the intent of the parties making the annexation; and (4) the relationship of the parties." *In re Lloyd*, Case No. CV 18-02936-JW, 2018 WL 6984813, at *4 (Bankr. D.S.C. Nov. 19, 2018) (citing *Smith v. Com. Credit Plan, Inc.* (*In re Avery*), 7 B.R. 28, 31 (Bankr. D.S.C. 1980)) (internal citations omitted). This Court also recognizes the common law test for retirement of mobile homes, as set forth in South Carolina case law and previously relied upon by this Court, is applicable in situations where the Statute is not followed. *Lloyd*, 2018 WL 6984813, at *5. That said, "the failure to follow the statutory procedure may be significant in the Court's determination of the parties' intent to affix a manufactured home to real property. . . ." *Id.*

Debtor concedes that he has not undertaken the processes described in the de-titling statute to retire or affix the subject mobile homes to the life estate real property. Therefore, the Court will evaluate Debtor's claim that the mobile homes he attempted to transfer to Wallace are affixed to real property, and cannot have been conveyed by title, under the common law test:

    **a. Mode of Attachment:** Debtor has not presented any evidence to the Court concerning the manner or mode by

which the relevant mobile homes were installed on the property. *See, e.g., City of N. Charleston v. Claxton*, 315 S.C. 56, 63, 431 S.E.2d 610, 614 (Ct. App. 1993) (noting that the lack of permanent foundations or additions to trailers indicated that the trailers were not fixtures). This factor is therefore neutral.

b. **Character of Structure:** Other than stating[37] that at least some of the mobile homes at issue have been "on the properties for over 35 years as the only livable or rental units thereon," Debtor has not presented any evidence concerning the character of the mobile homes. *See, e.g., In re Rebel Mfg. & Mktg. Corp.*, 54 B.R. 674, 676 (Bankr. D.S.C. 1985) (describing the character of the property as "a single structure not readily adaptable for movement without the expenditure of substantial funds and causing great damage to it and to its surroundings."). This factor is therefore neutral.

c. **Intent of the Party Making the Annexation**: In *Avery*, the Court found that the owner's decision to sell a parcel of real property after placing a mobile home on that property indicated the owner's intent that the mobile home be personal property, and not a fixture. *In re Avery*, 7 B.R. 28, 31 (Bankr. D.S.C. 1980). Debtor has an interest in the life estate that owns the underlying land, in which his daughter has a remainder interest. Conversely, Debtor has conveyed the mobile homes on the life estate land to Wallace. Debtor testified that he conveyed the mobile homes to Wallace so she would have something when he passed away. It stands to reason that, if Debtor intended for the mobile home to be fixtures of the land, he would have conveyed the land and the homes to one person or entity. It appears that Debtor's intent for the mobile homes is that they will become the personal property of Wallace, to do with as she wishes.

d. **The Relationship of the Parties**: Debtor has not presented evidence speaking to the relationship between Debtor, Movant, Wallace, and his daughter. *See, e.g., In re Lloyd*, No. CV 18-02936-JW, 2018 WL 6984813, at *7 (Bankr. D.S.C. Nov. 19, 2018) (noting that the debtor did not deal directly with the party who held the mortgage on the underlying land when he purchased mobile homes located on said land). That said, it appears that the title to the land and the mobile homes are held either by Debtor directly or by the life estate. This factor is therefore neutral. *See, e.g., In re Rebel Mfg. &*

---

[37] ECF No. 22, p. 6.

> *Mktg. Corp.*, 54 B.R. 674, 676 (Bankr. D.S.C. 1985) (holding
> "[b]ecause title to the land and to the mobile home was in the
> debtor, the fourth factor of *Avery* is irrelevant here.").

The record in this case indicates that the mobile homes conveyed to Wallace

by Debtor are not fixtures on the real property where they are located.

### III.  Was Debtor's July 2024 Transfer of Mobile Homes to Wallace a Fraudulent Conveyance?

In both the Motion and his objection to confirmation, Movant asserts

that the transfer to Wallace was made with intent to hinder, delay, or

defraud creditors. The Trustee's objection similarly notes her concerns that

the mobile home transfers were fraudulent under 11 U.S.C. § 548. Debtor has

claimed that his attempt to transfer the titles of various mobile homes to

Wallace failed because the mobile homes were affixed to the land and could

not be separately conveyed. The Court has found that the subject mobile

homes were not affixed to the land[38] and Debtor successfully transferred the

titles of these mobile homes to Wallace via the South Carolina Department of

Motor Vehicles.

---

[38] Debtor concedes that the mobile homes were transferred to Wallace as a gift, for no consideration, but asserts that under *In re Genesis Press, Inc.*, a transfer may only be set aside when it is established that (1) the grantor was indebted to the creditor at the time of the transfer, (2) the conveyance was voluntary, and (3) the grantor failed to retain sufficient property to pay his indebtedness to the creditor in full, not merely at the time of transfer, but in the final analysis when the creditor seeks to collect the debt. 559 B.R. 445, 453 (Bankr. D.S.C. 2016) (internal citations omitted). The Court notes that these factors are derived from this Court's application of the state of South Carolina's Statute of Elizabeth. *See* S.C. Code Ann. § 27-23-10 (2025). In the *Genesis Press* case, the Statute of Elizabeth was considering in the context of the Trustee's attempt to avoid a transfer under 11 U.S.C. § 544, which "does not establish substantive provisions for the avoidance of transfers; rather, it merely gives the Trustee the status of a creditor under state law and allows nonbankruptcy law to determine the rights that accrue as a result of that status." *In re Genesis Press, Inc.*, No. CV 6:16-3762-TMC, 2018 WL 11672750, at *3 (D.S.C. Mar. 5, 2018) (quoting *In re J.R. Deans Co., Inc.*, 249 B.R. 121, 129 (Bankr. D.S.C. 2000)). *In re Genesis Press* is not on point.

Under 11 U.S.C. § 548(a)(1)(A), a trustee may find a transfer made within two years before the date of the petition, if the debtor made the transfer "with the actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made ... indebted," is actually fraudulent under 11 U.S.C. § 548(a)(1)(A), and thereby avoid that transfer. The Court may consider and examine "badges of fraud" and infer intent to hinder, delay, or defraud a creditor. *In re Jones*, 397 B.R. 765, 770 (Bankr. D.S.C. 2008). This Court has previously recognized the "badges of fraud" include: the insolvency or indebtedness of the transferor, lack of consideration for the conveyance, relationship between the transferor and the transferee, the pendency or threat of litigation, secrecy or concealment, departure from the usual method of business, the transfer of the debtor's entire estate, the reservation of benefit to the transferor, and the retention by the debtor of possession of the property. *Anderson, v. Architectural Glass Constr., Inc.* (*In re Pfister*), Ch. 7 Case No. 09–05670–HB, Adv. No. 10-80162-HB, 2012 WL 1144540, at *5 (Bankr. D.S.C. Apr. 4, 2012) (citing *In re Jones*, 397 B.R. at 770). Actual fraud may be inferred from the presence of "badges of fraud"; however, that is not the end of the inquiry. *Hovis v. Ducate* (*In re Ducate*), 369 B.R. 251, 264 (Bankr. D.S.C. 2007).

There are several "badges of fraud" present in this matter from which the Court may infer actual fraud. Wallace is Debtor's romantic partner and did not tender any consideration beyond love and affection for the transfer.

25

Debtor made the transfer to Wallace after Movant obtained his judgment for
damages against Debtor. "Regardless of the ability of the courts to infer
actual fraudulent intent from the presence of 'badges of fraud,' actual
fraudulent intent requires a subjective evaluation of the debtor's motive."
*Pfister*, 2012 WL 1144540, at *5, (quoting *In re Jeffrey Bigelow Design Group,
Inc.*, 956 F.2d 479, 484 (4th Cir.1992)). Debtor's sworn testimony indicates
that the transfer was made for Wallace's financial comfort after Debtor's
death, and that he continues to pay taxes and finance maintenance of the
mobile homes. This testimony provides some evidence indicating that the
transfers could have been made for reasons other than to hinder, delay, or
defraud Movant.

A trustee may also avoid a transfer that is constructively fraudulent
where the debtor, voluntarily or involuntarily, received less than a
reasonably equivalent value in exchange for such transfer or obligation; and
was insolvent on the date that such transfer was made or such obligation was
incurred, or became insolvent as a result of such transfer or obligation. 11
U.S.C. § 548(a)(1)(B). To recover under § 548(a)(1)(B), the Trustee must
establish that: (1) the transfer was made by Debtor; (2) the transfer occurred
within 2 years of the date the petition was filed; (3) Debtor received less than
reasonably equivalent value in exchange for transfer; and (4) Debtor was
insolvent at the time of the transfer or became insolvent as a result of the
transfer. There is no question that the transfer of the mobile homes was

made by Debtor and occurred within 2 years before this case was filed.

Therefore, the Court must examine the evidence before it to determine

whether Debtor received less than reasonably equivalent value for transfer of

the mobile homes to Wallace and whether Debtor was insolvent, or became

insolvent, at the time of the transfer.

"When evaluating an avoidable transfer claim under § 548(a)(1)(B), the

Fourth Circuit has explained that the determination of 'reasonably

equivalent value' requires the court to 'focus... on the consideration received

by the debtor, not on the value given by the transferee.'" *Vieira v. Think Tank

Logistics, LLC, et al.* (*In re Levesque*), 661 B.R. 731, 775 (Bankr. D.S.C. 2024)

(quoting *Bigelow Design Grp.,* 956 F.2d at 484) (internal citations omitted).

The burden of demonstrating that the Debtor did not receive reasonably

equivalent value for the transfer lies with the Trustee. *Architectural Glass

Constr., Inc. v. Anderson (In re Pfister),* No. 7:12-cv-01825-HMH, slip op. at 10

(D.S.C. Oct. 10, 2014) (citing *In re Ducate*, 369 B.R. at 265)). This Court has

applied a two-step inquiry to determine reasonably equivalent value: (1) did

the debtor receive value and (2) was the payment reasonably equivalent to

the value extended? *In re Levesque*, 661 B.R. 731, 775 (Bankr. D.S.C. 2024)

(internal citations omitted).

Debtor received only love and affection as consideration for the

transfer. However, Debtor's accounting of the value of these mobile homes

has been inconsistent, and the Court cannot determine whether the

consideration received was reasonably equivalent to the value extended. Moreover, there is insufficient evidence in the record to determine whether Debtor was insolvent at the time the transfer was made.

The Trustee has not yet sought to avoid the conveyance of the mobile homes; however, such an action may be necessary if the mobile homes are not brought into the estate voluntarily. This order does not resolve whether those transfers are avoidable and whether Debtor's conduct constitutes cause to deny confirmation and dismiss this case.

## **CONCLUSION**

Given the discrepancies in valuation between the Original Schedules and Amended Schedules, the Court orders Debtor to submit a second set of amended schedules and a second modified plan. In the second set of amended schedules, Debtor must separately list the location and value of real property; separately list the location and value of any personal property, including any mobile home that Debtor claims an interest in; disclose the year, make, model, and dimensions of each mobile home that Debtor claims an interest in; identify the basis for his assertion that he holds only a 38% ownership interest in all life estate property; and provide a statement for each rented mobile home showing gross receipts, ordinary and necessary business expenses, and total monthly net rental income.

Therefore, it is hereby ordered that confirmation of the Modified Plan filed on November 25, 2025, is denied;

It is ordered that Debtor file amended schedules and a second modified plan addressing the deficiencies outlined above within ten days of the entry of this Order;

It is ordered that Debtor shall provide all documents requested by the Chapter 13 trustee within ten days of the entry of this Order;

It further is ordered that the Trustee and Movant submit further briefing on the question of whether Debtor's transfer of mobile homes to Chassity Wallace should be considered fraudulent under 11 U.S.C. § 548 on or before March 16, 2026, at 5:00 P.M.; and

If Debtor fails to comply with this Order, this case may be dismissed without further notice or hearing.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**02/03/2026**



*S. Jefferson Davis IV*
US Bankruptcy Judge
District of South Carolina

Entered: 02/03/2026